(No. 2061, September 12, 1917.)

McDONALD v. MAZON et al.

(On Motion for Rehearing, November 30, 1917.)

SYLLABUS BY THE COURT.

1. Evidence examined, and held to establish the fact that there was a valid and sufficient consideration for the execution of the note sued on.                           P. 442

2. Where both parties upon the trial treat an exhibit as having been introduced in evidence and upon the facts shown by such exhibit judgment is rendered by the trial court, and without such exhibit such judgment could not have been rendered, neither party can, on appeal, contend that such exhibit was not introduced in evidence.     P. 444

3. Where a party claims rights under a written contract, or agreement represented by separate writings, and the language of the contract, upon which his rights depend, is ambiguous or uncertain, the burden is upon such party to introduce evidence to explain the ambiguity and to show by extrinsic evidence that the right he claims is conferred upon him by the contract.     P. 445

4. The Supreme court has power to reverse a joint judgment as to one and affirm as to the other, where the facts and law justify such action. Sections 4074, 4076, and 4078, Code 1915, abrogate the common-law rule, which required the reversal of such a judgment as to all parties jointly liable, where it was erroneous as to one.     P. 447

5. Where persons jointly liable under a judgment of the district court appeal from the same and give a joint supersedeas bond, and such judgment is reversed as to one of such parties, the other becomes liable under such bonds as a surety.     P. 447

6. Where a supersedeas bond is executed, sureties thereon cannot escape liability by showing that such bond does not literally comply with the language of the statute, if the condition expressed is substantially of the same import.
P. 447

Appeal from District Court, Bernalillo County; Reynolds, Judge.

Action by D. F. McDonald against Leopoldo Mazon and Mazon Estate, Incorporated. Judgment for plaintiff, and defendants appeal. Affirmed as to defendant Leopoldo Mazon, and reversed as to the Mazon Estate, Incorporated, with direction to enter judgment in favor of the corporation.

Neill B. Field, and Carl H. Gilbert, both of Albuquerque, for appellants. J. R. Moore, of Albuquerque, for appellee.

## OPINION OF THE COURT.

ROBERTS, J. The appellee, D. F. McDonald, in September, 1915, was in the employ of the Stockmen's Guaranty Loan Company of Albuquerque, N. M., as an agent for the sale of its stock under an agreement with the company by which he was to receive, as his compensation for stock sold by him, 20 per cent. of the sale price. On the 24th day of September, 1915, the appellee procured the appellant Leopoldo Mazon, as a purchaser of 5,000 shares of said stock at and for the price of $2 per share, and at the same time Mazon executed the following written subscription:

"Agreement to purchase stock of Stockmen's Guaranty Loan Co. Capital stock $500,000.00.
"To Root & Chase, Fiscal Agents:
"I, L. Mazon, of Albuquerque, do hereby apply for 5,000 shares of the fully paid and non-assessable capital stock of the Stockmen's Guaranty Loan Company of Albuquerque, New Mexico, and agree to pay therefor two dollars per share as follows: $2,500, cash, receipt whereof is hereby acknowledged, and note for $7,500 due in twelve months after date. The stock herein subscribed for shall be held by the Stockmen's Guaranty Loan Company as collateral security and delivered when fully paid for in cash.
"Dated and signed this 24th day of Sept., 1915.
                    Leopoldo Mazon, Subscriber.
"D. F. McDonald, Agent."

Mazon, in discharge of his obligation under said subscription, executed and delivered three promissory notes aggregating $10,000, one of said notes being for $7,500, payable to the Stockmen's Guaranty Loan Company, due 12 months after date, two notes in favor of and indorsed by himself in blank, one of which was for the sum of $2,000 and the other $500. In payment of the appellee's commission earned in said transaction, the Stockmen's Guaranty Loan Company delivered to him the note for $2,000, above mentioned, due 6 months after date, which is the note sued on herein.

On the 30th day of November, 1915, the corporation issued a certificate, No. 75, for 5,000 shares of said stock

to appellant Mazon, but retained. the stock as security for the payment of the note of $7,500 in favor of the company, executed by Mazon in partial discharge of his obligation under his subscription contract. The complaint alleged that on the 18th day of November, 1915, appellant Mazon transferred all his property to his coappellant, Mazon Estate, Incorporated, and that as a part of the consideration for that transfer the Mazon Estate, Incorporated, assumed the payment of all the debts of the defendant Leopoldo Mazon.

The answer of appellant Leopoldo Mazon was, in substance, as follows: First, he admitted the execution and delivery of the note sued on; second, he alleged that the sole and only consideration for the execution and delivery of the note was in part payment of certain shares of stock in the Stockmen's Guaranty Loan Company; third, he denied that the note was acquired by appellee in due course before maturity for a valuable consideration; and, fourth, alleged that he had received no shares of stock in said company and that by reason of such fact there was and has been no consideration whatever for said note, of which fact the appellee was alleged to have had full knowledge. Issue was joined on the allegations of the answer.

The only issue raised by the answer of the Mazon Estate, Incorporated, was by its denial of the allegations of the complaint to the effect that Leopoldo Mazon had transferred all his property to said corporation, and that as a part of the consideration therefor the corporation assumed the payment of all the debts of the defendant Leopoldo Mazon. The issues were thus presented to the lower court for determination, namely: Frst, whether the appellant Mazon received any consideration for the execution and delivery of the note sued on; second, whether the Mazon Estate, Incorporated, assumed the payment of the debts of the defendant Leopoldo Mazon, including the debt evidenced by the note in this case. The court found both issues in favor of the appellee and rendered judgment accordingly, from which this appeal is prosecuted.

[1] The first point upon which appellants rely for a reversal is that the appellee was not a transferee in due

course of the note in question, nor was the note supported by any consideration. As shown in the third paragraph of the answer of Leopoldo Mazon, he admitted that he executed said note in part payment for certain shares of stock in the Stockman's Guaranty Loan Company; but in the fifth paragraph he alleged that he had received no shares of stock in said company, by reason of which there had been no consideration, and that if there was an apparent consideration it had failed by reason of the fact that no such stock had been issued and delivered to him. The evidence clearly shows that the note in question was executed in part payment of the subscription which appellant Mazon had made to the capital stock of the company, and it is likewise clearly shown that in pursuance of such subscription a certificate for 5,000 shares of the stock of the company was issued to Mr. Mazon on the 30th day of November, 1915; the original certificate being produced and introduced in evidence. Mazon bargained for 5,000 shares of stock, for which he agreed to pay $10,000, and as evidence of his indebtedness he executed and delivered the three promissory notes mentioned, aggregating that amount. By so doing he acquired the right to have the stock for which he bargained issued to him, and it was issued and ready for delivery upon the payment of the balance of $7,500 due thereon for which the stock was held as collateral security. The company, under the subscription agreement, had the right to hold the stock as security. The fact that the company saw fit to pay the agent a commission of 20 per cent. for making the sale, and that the agent was contented to take the note for $2,000 in payment of his commission, in lieu of cash, is a matter between the company and appellee, and we fail to see how it alters the fact that Mazon bought 5,000 shares of the stock for which he agreed to pay $10,000; neither does it alter or affect the right of the parties that the salesman knew, at the time of the execution of the note, that he was to take the $2,000 note in payment of his commission. The note being supported by a valid consideration, the question as to whether the appellee was a trans-

feree in due course is immaterial under the issues raised
by the pleadings.

It is next contended that there was no assumption of
the debt in question by the appellant Mazon Estate, In-
corporated.  Upon the trial appellee called O. N. Marron
as a witness.  Marron testified that he was president of
the Mazon Estate, Incorporated, in November, 1915, and
identified the minutes of the meeting of the board of
directors held on the 18th day of that month, which were
marked "Exhibit A."  These minutes recite, in so far as
material, as follows:

"The president then presented the written proposal of
Leopoldo Mazon, Jr., and Luz Mazon to assign to the com-
pany all the property, real and personal, from them by or
through the Leopoldo Mazon Estate as more particularly ap-
pears in said proposition which was ordered spread upon the
minutes and is as follows:  'To the Officers and Directors
of the Mazon Estate, Incorporated:  We hereby offer to con-
vey to the Mazon Estate, Incorporated, all our right, title and
interest in the lands, stock and personal property now owned
by us and which belonged to Leopoldo Mazon in his lifetime
in exchange for the entire capital stock of the company,
same to be issued to us as fully paid stock.  The property to
be conveyed to be all of the real estate formerly belonging to
the said Leopoldo Mazon, whether the same were his indi-
vidual property or community property.  Dated this 18th day
of November, 1915.  Luz C. Mazon.  Leopoldo Mazon, Jr.'

"The president also presented a resolution of the stock-
holders approving said proposal and authorizing and instruct-
ing the directors to accept the same and take such action in
regard thereto as may be necessary.

"The following resolution was thereupon moved, seconded,
and unanimously adopted:  'Whereas, the property offered
in exchange for the entire capital stock of this company by
Leopoldo Mazon, Jr., and Luz C. Mazon, in their proposition
to this company is adjudged by this board to be reasonably
worth the par value of the shares of stock so proposed for
over and above all the debts of the said Luz C. Mazon and
Leopoldo Mazon, Jr., which are to be assumed by the com-
pany and said property to be necessary for the use and law-
ful purpose of this company.' "

[2]  Appellants contend that the minutes of the meet-
ing of the board of directors were never introduced in
evidence, and it must be admitted that, while the minutes
are incorporated in the bill of exceptions under "Exhibit
A," it does not show that such exhibit was ever formally
introduced in evidence.  The transcript of the stenograph-

cr's notes, together with copies of all exhibits, including
Exhibit A, was, upon motion by attorneys for appellants,
certified by the court as bill of exceptions in the case, and
certainly without the exhibit having been considered by
the trial court judgment would not have been rendered for
appellee. The exhibit is referred to in the abstract of the
record prepared by appellants, and apparently in their brief
for the first time, the suggestion was made that this ex-
hibit had not been introduced in evidence. This question
is disposed of by the case of Finnerty v. Stratton's Estate,
123 Pac. 677, where it is said:

"The record discloses that the written instruments consid-
ered were treated by both counsel and court as having been
introduced in evidence. In such circumstances neither party
will be heard to say, on review, that they were not, even
though the record fails to disclose a formal introduction. It
was upon the strength of these writing that counsel for the
estate objected to the oral testimony excluded. Obviously
they must have been regarded as introduced in evidence;
otherwise there was no basis for the objection.

We conclude that where both parties upon the trial treat
an exhibit as having been introduced in evidence and upon
the facts shown by such exhibit judgment is rendered by
the trial court and without such exhibit such judgment
could not have been rendered, neither party can, on ap-
peal, contend that such exhibit was not introduced in
evidence.

[3] It is contended by appellee that the proposition
made to the corporation, Mazon Estate, Incorporated, by
the Mazons, accepted by the resolution heretofore quoted,
constituted a contract between Leopoldo Mazon and the
corporation by which it undertook to pay all the debts
which he then owed; that the contract was made for the
benefit of his creditors, one of which the appellee was at
that time. On the other hand, it is contended by the ap-
pellant that the resolution did not amount to an agree-
ment on the part of the corporation to pay the debt in
question, and the evidence of Mr. Marron, who was presi-
dent of the corporation at the time the stock was exchanged
for the property of the Mazons, sheds no light upon the
matter. The witness stated that it was the understanding

that two of the debt of Leopoldo Mazon should be paid, but he was not asked as to what those debts were, and there is no evidence to show that the note in question was one of such debts. It is to be noted that, although the alleged resolution does set forth, by way of recitation, that the property offered to the corporation by Luz C. Mazon and Leopoldo Mazon was adjudged by the board of directors to be worth the par value of the stock to be exchanged therefor, over and above all the debts which were to be assumed by the company, still there is no recital as to what debts the company was assuming and undertaking to pay. In the proposition referred to, heretofore set out in this opinion, it will be noted that it does not contain any recital as to an assumption by the corporation of any of the debts of Luz C. Mazon and Leopoldo Mazon. The resolution does not state that the corporation does assume the debts of Luz C. Mazon and Leopoldo Mazon, or that it has assumed them, but merely states that the property is worth the par value of the stock over and above all the debts of said Luz C. Mazon and Leopoldo Mazon, which are to be assumed by the company. What specific debts will constitute all those which are to be assumed? When and under what circumstances will that assumption take place? On these important questions the resolution is silent. Where a party claims rights under a written contract, or agreement represented by separate writings, and the language of the contract, upon which his rights depend, is ambiguous or uncertain, the burden is upon such party to introduce evidence to explain the ambiguity and to show by extrinsic evidence that the right he claims is conferred upon him by the contract. In Elliott on Contracts, § 1655, it is said:

"Parol evidence is admissible, in the construction of contracts, to define the nature and qualities of the sub-ject-matter, the situation and relations of the parties, and all the circumstances, in order that the courts may put themselves in the place of the parties, see how the terms of the instrument affect the subject-matter, and ascertain the significa-tion which ought to be given to any phrase or term in the contract which is ambiguous or susceptible of more than one interprettion; and this, although the result of the evidence may be to contradict the usual meaning of the terms and

phrases used in the contract; but if the words are clear and unambiguous, a contrary contention may not be derived from the circumstances."

If it be assumed that the language used in the resolution was simply ambiguous and might have been explained by parol evidence, nevertheless the evidence offered by appellee failed to give meaning to the language or to explain away the ambiguity. The burden was upon the appellee to establish the fact that the corporation had assumed the payment of this particular debt. This burden he failed to meet, and for this reason the trial court was in error in awarding judgment against the Mazon Estate, Incorporated. There was no error in giving appellee judgment against appellant Leopoldo Mazon, as the facts clearly establish his individual liability on the note.

For these reasons the judgment will be affirmed as to Leopoldo Mazon and reversed as to the Mazon Estate, Incorporated, with instruction to the trial court to enter judgment in favor of said corporation; and it is so ordered.

HANNA, C. J., and PARKER, J., concurring.

## ON MOTION FOR REHEARING.

ROBERTS, J.—Appellants have filed a motion for rehearing in this case, advancing three grounds therefore, as follows: First, that a joint judgment at law, which is erentirety if another disposition thereof would prejudice any of the appellants; second, that where a bond is not in the form prescribed by statute, the court has no jurisdiction to direct a judgment against the bondsmen in a summary proceeding, even though the bond in question may have been given and accepted as a supersedeas bond; third, that there has been no breach of the conditions of the bond which was executed in this case.

[4-6] It is perhaps true that under the common law a joint judgment, erroneous as to one of the parties, was required to be reversed as to all the parties jointly liable, but this rule is abrogated in this state by sections 4074, 4076 and 4078. Appellants state that the Supreme Court of the United States has held that when complete justice

may be best accomplished through a final disposition of such cases by the appellate tribunal, the court may, in the exercise of its sound discretion, affirm the judgment appealed from as to one joint appellant and reverse it as to others. In this case, however, appellants contend that the Mazon Estate, Incorporated, is prejudiced by the affirmance of the judgment as to its coappellant, Leopoldo Mazon, and for this reason the case should also have been reversed as to him. The basis for the claim of prejudice is that both appellants executed a joint supersedeas bond, and the affirmance of the judgment as to Leopold Mazon makes it liable on such bond. The answer to this contention is that it voluntarily executed the bond in question. The Mazon Estate, Incorporated, is not prejudiced by our affirmance of the judgment as to Leopoldo Mazon, in so far as the judgment rendered by the district court is concerned, for we have relieved it from liability under such judgment. If injury results to it, it is occasioned by its voluntarily entering into a joint supersedeas bond with its coappellant. It could have avoided liability by giving a separate bond, but it elected to supersede the judgment, not only as to itself, but for its coappellant. By joining in the bond in question as a coprincipal, it becomes a surety for its coprincipal. The reversal of the judgment as to one of the appellants does not relieve the coappellant and principal and sureties from liability on the supersedeas bond.

"The general rule is that co-principals in a bond are sureties for each other. On an appeal bond executed by three persons as principals and one as surety, judgment may be entered by the creditor against all three of the principals, notwithstanding the verdict finds against one of the principals only. The two principals against whom the appellant failed to recover having joined in an appeal bond with a coprincipal in that bond against whom there was a recovery in the action, they stood in relation of sureties for him." Lewis et al. v. Maulden, 93 Ga. 758, 21 S. E. 147.

"It is contended, first, that the appellant was released from its obligation on the appeal bond because of the partial reversal by this court of the judgment which the bond was given to supercede. The contention is rested on the ground that the language of the bond is join in form; that, while the bond is conditioned to bind the surety as to judgments and orders rendered or made, or ordered to be rendered or made, against the appellants jointly on the appeal, it is not condi-

tioned to bind the surety to judgments or orders made, or directed to be made, against them severally. The case of Marsh v. Byrnes, 7 Wkly. Law Bul (Ohio) 345, is cited as sustaining the contention. Seemingly the caes does so, but it was based on the case of Lang v. Pike, 27 Ohio St. 498, which we find was overruled in the later case of Alber v. Frelich, 39 Ohio St. 245. But we could not accept the contention as controlling in any event. Our statute permits of joint appeals, and further provides that the Supreme Court may, on the appeal, affirm, reverse, or modify the judgment appealed from as to any or all of the parties. It provides for but one form of bond, conditioned in but one way, whether the appeal be joint or several. Since the bond in question was given pursuant to this statute, and is conditioned as prescribed therein, it would be a perversion of its purpose and meaning to hold that, because the bond referred to the appellants jointly, instead of jointly and severally, it is insufficient to secure the respondents, in so much of the judgment as was awarded in their favor." McFeron v. Fidelity & Deposit Co., 85 Wash. 303, 148 Pac. 14.

"The judgment was also properly entered against the defendant's surety in the appeal bond, notwithstanding the acquittal in the circuit court of one of the two defendants against whom the original recovery was had. To hold otherwise would be a very narrow construction of the statute, * * * required neither by the words of the act nor the obvious intention of the Legislature, and tending rather to defeat than to promote the administration of justice." Hood v. Mathis, 21 Mo. 308, 313.

See, also, Vandyke et al. v. Weil, 18 Wis. 277; Johnson v. Reed, 47 Neb. 322, 66 N. W. 405.

The judgment in question was for a fixed sum of money, and under section 4485, Code 1915, the supersedeas bond should have been "in double the amount of such judgment complained of." The appellants, however, elected to supersede the judgment by executing a bond under the latter portion of such section, which in brief, provides that where the judgment is for other than a fixed amount of money, the district court or the judge thereof shall fix the amount of the supersedeas bond. In this case appellants applied to the district court to fix the amount of the bond in question, and this it did, fixing the amount thereof at $5,000, which was more than double the amount of the judgment and costs. The bond was conditioned as required by the statute in such cases, with the exception that the word "confirmed" was used instead of "affirmed," as provided by the statute. Because of their failure to strict-

ly comply with the statute in the manner of executing the bond, appellants now seek to avoid liability under the bond. A few quotations from adjudicated cases and text-books will dispose of this contention:

"Lastly, it is claimed that the bond did not conform to the statute providing for the execution of supersedeas bonds to stay judgments, and prescribing the conditions to be inserted therein. The bond is not in strict comformity to the statute. * * * The parties executed it and got all they desired under it, to wit, a stay of execution pending the determination of their proceeding in error. They cannot now be heard to urge its lack of conformity to the law. * * * They cannot now be heard to say that what they offered as a legal obligation, and which he accepted as such, was invalid and not binding upon them." Gille v. Emmons, 61 Kan. 217, 222, 59 Pac. 338, 340.

"It is said that the contract of a surety is strictissimi juris. The saying is liable to abuse in its application. Considering the situation of the obligee in an appeal bond, it would seem that his right should be regarded equally with those of the surety. An appeal bond may be executed and approved, and this accepted for the judgment creditor, without his consent or knowledge, and thereby the enforcement of his judgment is stayed. It is the act of the surety which enables the judgment debtor to accomplish such result. The surety, having thus prejudiced the judgment creditor, and having thus obtained for his principal (the judgment debtor) the benefit of an appeal, should not, upon the breach of the condition of the bonds, be allowed to escape liability except for the most substantial reason." Shannon v. Dodge, 18 Colo. 164, 169, 32 Pac. 61, 63.

See, also, Callbreath v. Coyne, 48 Colo. 199, 109 Pac. 428, 430.

"The ordinary canons of interpretation of contracts are to be applied in the construction of appeal securities, the rule being that the contract will, where possible, be so construed as to carry out the intention of the parties. * * * In construing the conditions of an appeal bond the court will examine the entire instrument to ascertain its meaning, and consider, not only the subject-matter, but the situation of the parties and their purpose in making the contract. Courts will construe the bond according to the ordinary meaning of the language used, and will not adopt a construction which will do violence to the rules of language or law; but they may transpose or reject insensible words and depart from the letter of the text to effect the intention of the parties, where it can be done without framing a new contract. * * * Reference may also be had to the nature and character of the judgment appealed from and to the record of proceedings, to determine the purpose and intent of the bond." 4 C. J. 1252, § 3321.

"In order to be valid as a statutory obligation, an appeal bond must be conditioned in substantial compliance with the statute; but the exact form or language of the statute need not be followed, if the condition expressed is of substantially the same import." 4 C. J. 1250, §3320.

We conclude that where a supersedeas bond is executed sureties thereon cannot escape liability by showing that such bond does not literally comply with the language of the statute, if the condition expressed is substantially of the same import.

The third contention advanced by appellants is disposed of by the cases cited under the first point discussed.

For the reasons stated, the motion for re-hearing will be denied; and it is so ordered.

HANNA, J., concurs. PARKER, J., being absent, did not participate.